# NO. 12-19-00265-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ANGEL ROSE LEE,* *APPELLANT* | § | *APPEAL FROM THE 159TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Angel Rose Lee appeals her conviction for sexual assault of a child. In four issues, Appellant contends the trial court abused its discretion in admitting certain pieces of evidence. We affirm.

## BACKGROUND

Appellant was arrested and charged by indictment with four counts of sexual assault of a child. Appellant pleaded "guilty," and the matter proceeded to a jury trial on punishment. Following evidence and argument, the jury sentenced Appellant to ten years confinement on each count, to be served concurrently. This appeal followed.

## COMMENT ON TRUTHFULNESS

In her first issue, Appellant argues the trial court abused its discretion when it allowed an expert witness to testify as to the child victim's credibility.

### Standard of Review and Applicable Law

The admission of expert testimony is reviewed on appeal for an abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). A trial court's ruling on the admissibility of expert testimony will rarely be disturbed by an appellate court. *Vela v. State*, 209

S.W.3d 128, 136 (Tex. Crim. App. 2006); ***Rodgers v. State***, 205 S.W.3d 525, 527–28 & n.9 (Tex. Crim. App. 2006). As with other types of evidentiary rulings, we will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. ***Layton v. State***, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009) (citing ***Montgomery v. State***, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). If the record supports the trial court's decision on the admission of evidence, there is no abuse of discretion. ***Osbourn v. State***, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002); ***Montgomery***, 810 S.W.2d at 379; ***Marsh v. State***, 343 S.W.3d 475, 478 (Tex. App.—Texarkana 2011, pet. ref'd).

Pursuant to Texas Rule of Evidence 702, before admitting expert testimony, the trial court must be satisfied that three conditions are met: (1) the witness qualifies as an expert by reason of her knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is appropriate for expert testimony; and (3) admitting the expert testimony will actually assist the factfinder in deciding the case. ***Vela***, 209 S.W.3d at 131; *see also **Jackson v. State***, 17 S.W.3d 664, 670 (Tex. Crim. App. 2000); TEX. R. EVID. 702. These conditions are commonly referred to as (1) qualification, (2) reliability, and (3) relevance. ***Vela***, 209 S.W.3d at 131. Reliability focuses on the subject matter of the witness's testimony. ***Id.*** at 133. The proponent of the expert testimony must demonstrate by clear and convincing evidence that the expert testimony is reliable. ***Russeau v. State***, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005). The focus of the reliability analysis is to determine whether the evidence is based on sound scientific methodology such that testimony about "junk science" is weeded out. ***Tillman v. State***, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); ***Jordan v. State***, 928 S.W.2d 550, 555 (Tex. Crim. App. 1996). When addressing fields of study outside the hard sciences, such as the social sciences or fields that are based primarily on experience and training as opposed to the scientific method, the requirement of reliability still applies but with less rigor than to the hard sciences. ***Nenno v. State***, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998), *overruled on other grounds by **State v. Terrazas***, 4 S.W.3d 720 (Tex. Crim. App. 1999); ***Perez v. State***, 113 S.W.3d 819, 833 (Tex. App.—Austin 2003, pet. ref'd), *overruled on other grounds by **Taylor v. State***, 268 S.W.3d 571 (Tex. Crim. App. 2008).

Even if the expert's testimony meets the Rule 702 requirements, expert testimony that a particular witness is truthful is inadmissible under Rule 702. *See **Yount v. State***, 872 S.W.2d 706, 711 (Tex. Crim. App. 1993). Moreover, an expert may not offer a direct opinion on the

truthfulness of a child complainant's allegations. ***Schutz v. State***, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997).

**Analysis**

Appellant contends that the trial court abused its discretion when it allowed Annie Henderson, the forensic interviewer, to testify regarding the child victim's credibility. Henderson was questioned on voir dire outside the presence of the jury prior to her testimony. On voir dire, Henderson testified regarding her employment, educational background, training, and experience as a forensic interviewer. She further testified about her training to detect grooming and coaching. When asked whether she believed John Doe was coached, Henderson replied as follows:

> Q. And could that coaching even come from the pressure of under grooming?
>
> A. Yes.
>
> Q. Okay. Did you see in John Doe coaching?
>
> A. Yes.
>
> Q. How so?
>
> A. He talked about, during his second interview with me, he talked about why he lied in his first interview. He said, "I lied because Angel and I talked, and we said we weren't going to talk about what happened if the police asked us. We were going to lie. But I found out that she talked about it."
>
> Q. And in your opinion was John Doe coached by the Defendant?
>
> A. Yes.

On cross-examination, Henderson testified to the following:

> Q. Ma'am, if I understand your opinion about coaching is based upon what John Doe told you, that he'd been told to say something?
>
> A. Correct.
>
> Q. And that's in the second interview?
>
> A. During the second interview, he said that he lied during the first one because Angel told him if the cops come asking questions or anyone asks questions, "we're just going to lie."
>
> Q. Okay. And that's the basis of your opinion?
>
> A. It's not my opinion. It's what he said.

On redirect, Henderson clarified that she is not trained to testify about the credibility of a child victim:

> Q. You're not trained to testify about credibility of the child, right?
>
> A. Correct. It's –
>
> Q. You're just giving your opinion based on your observations and your training?
>
> A. Correct.
>
> Q. Okay. And looking at everything in totality, the first interview, the second interview, you believe he was coached?
>
> A. Correct.

Appellant objected to Henderson's opinion on coaching and argued that Henderson's opinion was based on her belief that John Doe was telling the truth and simply bolstered John Doe's credibility. The trial court overruled the objection and clarified that Henderson was not permitted to testify about John Doe's credibility. However, Appellant could question Henderson on whether she was relying on something being true or untrue.

When Henderson testified before the jury, the trial court gave the jury a limiting instruction:

> I'm going to give you a limiting instruction, ladies and gentlemen, about the basis of Ms. Henderson's opinion. She's going to be testifying about what the child allegedly said. All right? That's hearsay until you hear from the child himself.
> I'm instructing you that she's not rendering an opinion about the credibility of that. She's not permitted to. She's just rendering the basis of the opinion, and you, as the sole and exclusive judges of evidence and testimony to be presented, will determine if the basis of that opinion is true or not.

Henderson then testified regarding coaching:

> Q. Did you sense that he was coached in forensic interview number one?
>
> A. Yes.
>
> Q. Okay. How so?
>
> A. Because of the excuses and the things that -- the reasoning he was putting behind the messages[1] and the way he was trying to cover up the messages, I guess.
>
> Q. And he was telling you he was -- in what way was he talking about those messages?
>
> A. That they were just really good friends, and his mom was just jealous of them.

---

[1] Referring to Facebook messages between Appellant and John Doe.

. . .

Q. Okay. And in the second interview, he gave you reasons why he was not truthful in the first one?

A. Yes.

Q. Okay. And did that give an indication that he had been coached even further when you compare the two together in forensic interview number one?

A. Yes.

Q. Can you tell them why. What did he do or say in the second interview that made you think there was coaching, that you gave that opinion?

A. Yes, he said, "She said she wanted to keep things secret. She didn't want to tell nobody. Me and her were not going to tell the cops -- if the cops asked. That's why I didn't tell the truth the first time. She told me not to."

Thereafter, John Doe testified before the jury. During that testimony, he admitted that he was not honest during the first forensic interview because he had made a plan, and denied being anything more than friends with Appellant. He admitted this was not true and admitted lying during the first interview. John Doe testified that he and Appellant agreed they "wouldn't tell nobody." He denied that Appellant coached him or told him what to say in the interview.

On appeal, Appellant argues that Henderson's opinion that coaching occurred necessarily means that she believed John Doe's statement to be credible and truthful. He further contends that her testimony should have been excluded as a result.

Henderson testified about her observations of John Doe's behavior during the first interview, including that he did not make an outcry during the first interview and that his answers were common among children who have been coached. Her opinion that John Doe may have been coached was based on her observations. Although direct opinion on the truthfulness of a child is inadmissible because it does not assist the trier of fact, testimony about the behavior of child sex abuse victims is admissible under Rule 702. *Yount*, 872 S.W.2d at 709; *Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993). Henderson testified about John Doe's behavior during the interviews; she did not provide a direct opinion on whether he was telling the truth or was a credible witness. *See Krause v. State*, No. 12-19-00081-CR, 2020 WL 3276650, at *8 (Tex. App.—Tyler June 17, 2020, pet. filed) (mem. op., not designated for publication) (forensic interviewer's testimony about S.T.'s recollection of sensory details did not give direct opinion that S.T. did not fabricate story and was truthful about allegations); *see also Shaw v. State*, 329 S.W.3d 645, 650 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (officer's

testimony that child victim's actions were "appropriate" did not provide direct opinion on whether victim was telling the truth). Moreover, "[w]hile an expert's testimony that a child witness is truthful is inadmissible under Texas Rule of Evidence 702, an expert's opinion on signs of coaching or manipulation may assist the trier of fact and may therefore be admissible." *Granados v. State*, No. 05-17-01301-CR, 2019 WL 1349510, at *1 (Tex. App.—Dallas Mar. 26, 2019, no pet.) (mem. op., not designated for publication) (trial court did not abuse discretion by allowing expert to testify she did not see "red flags" indicating coaching and lying when interviewing C.M. and L.M.). And we presume the jury followed the trial court's limiting instruction regarding the extent of Henderson's testimony. *See Gaytan v. State*, 331 S.W.3d 218, 228 (Tex. App.—Austin 2011, pet. ref'd) (appellate court presumes jury obeyed limiting instructions). Additionally, the jury heard John Doe testify and could assess his credibility for itself. *See Wiley v. State*, No. 12-17-00236-CR, 2018 WL 2440523, at *2 (Tex. App.—Tyler May 31, 2018, no pet.) (mem. op., not designated for publication) (it is jury's province to determine credibility of child victim and other witnesses and weight to be given that evidence). Accordingly, the trial court did not abuse its discretion in admitting Henderson's testimony. We overrule Appellant's first issue.

### HEARSAY

In his second, third, and fourth issues, Appellant contends the trial court abused its discretion in admitting hearsay evidence. Specifically, he urges the trial court erred in admitting unsworn out-of-court statements made by John Doe to Henderson and the entirety of the forensic interviews.

**Standard of Review and Applicable Law**

We review the trial court's admission of evidence for an abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006); *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Harris v. State*, 133 S.W.3d 760, 770 (Tex. App.—Texarkana 2004, pet. ref'd). An abuse of discretion occurs only when the trial court's decision "was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Harris*, 133 S.W.3d at 770–71 (quoting *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992)). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any applicable legal theory. *Dixon*, 206 S.W.3d at 590.

Rule of Evidence 703 "allows expert opinion testimony that relies on facts or data collected or reported by another when those facts or data are the type 'reasonably relied upon by experts in the particular field in forming opinions.'... even if the underlying facts or data are themselves inadmissible." *Tex. Worker's Comp. Comm'n v. Wausau Underwriters Ins.,* 127 S.W.3d 50, 56–57 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); TEX. R. EVID. 703.

Rule 705 provides, in pertinent part:

> **(a) Stating an Opinion Without Disclosing the Underlying Facts or Data.** Unless the court orders otherwise, an expert may state an opinion--and give the reasons for it--without first testifying to the underlying facts or data. But the expert may be required to disclose those facts or data on cross-examination.
> . . .
> **(d) When Otherwise Inadmissible Underlying Facts or Data May Be Disclosed; Instructing the Jury.** If the underlying facts or data would otherwise be inadmissible, the proponent of the opinion may not disclose them to the jury if their probative value in helping the jury evaluate the opinion is outweighed by their prejudicial effect. If the court allows the proponent to disclose those facts or data the court must, upon timely request, restrict the evidence to its proper scope and instruct the jury accordingly.

TEX. R. EVID. 705.

## Out-of-Court Statements by John Doe to Henderson

During Henderson's testimony, the State sought to question Henderson regarding statements made to her by John Doe. Appellant objected on hearsay grounds. After a discussion regarding whether the content of John Doe's statements was necessary for establishing the basis for Henderson's opinion, the trial court overruled the objection and granted Appellant a running objection as to the challenged testimony. As previously stated, the trial court gave the jury a limiting instruction before Henderson testified

Henderson subsequently testified, as set forth previously, on the issue of coaching, which included John Doe's statement that:

> "She said she wanted to keep things secret. She didn't want to tell nobody. Me and her were not going to tell the cops -- if the cops asked. That's why I didn't tell the truth the first time. She told me not to." I said, "When did you-all have that conversation?" "I don't remember," he said, but it was in messages."

The evidence shows that John Doe submitted to two forensic interviews. In the first interview, he denied any sexual relationship with Appellant. He admitted to the relationship in

7

the second interview. Henderson testified that the inconsistency between the two interviews indicated to her that John Doe had been coached. Her testimony does not amount to an opinion as to whether a sexual relationship had occurred and does not constitute hearsay. *See* TEX. R. EVID. 801(d) ("hearsay" is statement offered to prove truth of matter asserted).

Nevertheless, Appellant contends the statements were unfairly prejudicial. However, disclosing the statements Henderson relied upon in forming her opinion assisted the jury in evaluating the weight to give her opinions. *See Austin v. State*, 222 S.W.3d 801, 812 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (citing **Ramirez v. State**, 815 S.W.2d 636, 651 (Tex. Crim. App. 1991)) (although statements are prejudicial and there is some risk jury could use them for another purpose, risk did not outweigh value as explanation and support for doctor's opinions); **Moulton v. State**, 360 S.W.3d 540, 566 (Tex. App.—Texarkana 2011), *rev'd on other grounds*, 395 S.W.3d 804 (Tex. Crim. App. 2013). Despite any prejudicial nature of the statements or the existence of some risk the jury might use the statements for another purpose, the trial court could reasonably conclude that this risk did not substantially outweigh the evidence's value as explanation and support for Henderson's opinions. *See Austin*, 222 S.W.3d at 812; **Moulton**, 360 S.W.3d at 566. We overrule issue two.

## The Video Exhibits

At the end of the State's direct examination of Henderson, it offered the recordings of John Doe's forensic interviews, Exhibits 37 and 40, into evidence. Appellant objected that the videos are hearsay and inadmissible. The trial court overruled the objection and admitted the videos under Rule 705 as the basis for the expert's opinion:

> The Court: Okay. I'm going to admit it with a limiting instruction. Again, it's just the basis of her opinion. I'll overrule the objection, but it's not to be published until after -- if it's published at all -- until after the victim testifies.
>
> Appellant: And I reserve the right to additional objections at that time.
>
> The Court: Sure.
>
> Appellant: Yes, sir. And I'll subject that. I think the prejudicial impact of this outweighs the basis under the Rule 705.
>
> The Court: That is part of the rule, and I've considered that.
>
> Appellant: Considered that and overruled, is that –
>
> The Court: I've overruled, yes, sir.

> The State: Your Honor, so I can make – the record is clear. The admissibility is under what you said is Rule 705, the basis -- forming the basis of it.
>
> The Court: I'm permitting it to be admitted at this time under 705 as the basis of the witness's opinion.

Exhibits 37 and 40 were admitted into evidence during Henderson's testimony. However, they were not published during her testimony. Exhibit 40, the second interview, was later withdrawn. Exhibit 37, the first interview, was played in its entirety during John Doe's testimony. Therefore, we limit our analysis to Exhibit 37.

John Doe testified that he and Appellant had discussed that their relationship was "wrong," that he did not want to get Appellant in trouble, and that he and Appellant "told each other we wouldn't tell nobody." He further testified that he did not tell Appellant that he was going to a forensic interview. He testified that Appellant had not coached him or told him what to say in the interview. On redirect examination, the State noted that both Appellant and John Doe used the word "jealous" in the first interview. When asked if this was a coincidence, John Doe responded, "I'm pretty sure we both know she was jealous." At that point, the State moved to play the first forensic interview as impeachment evidence to show that John Doe used the word "jealous" more than once. The trial court overruled Appellant's objections and reminded him that the exhibit had previously been admitted during Henderson's testimony. The trial court also explained that the interview is relevant to the issue as to whether Appellant and John Doe planned to lie to the authorities.

The jury is the sole judge of witnesses' credibility and the weight to be given to the evidence. *See **Hooper v. State***, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Therefore, the jury was tasked with weighing John Doe's conflicting statements during the forensic interview and trial. Appellant argues that Henderson's "endorsement of the out of court statement encouraged the jury to give more weight to the out of court statement." As discussed above, Henderson's testimony does not amount to an opinion on John Doe's credibility or truthfulness. And again, the trial court gave the jury a limiting instruction explaining that they are the judges of credibility, not Henderson, and we presume the jury followed the trial court's instruction. *See **Elizondo v. State***, 487 S.W.3d 185, 208 (Tex. Crim. App. 2016); ***Gamboa v. State***, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009); *see also **Gaytan***, 331 S.W.3d at 228.

9

As with the statements, we likewise reject Appellant's contention that admission of Exhibit 37 was unfairly prejudicial. The trial court could reasonably conclude that the forensic interview would assist the jury in evaluating the weight to give Henderson's opinions. *See* ***Austin***, 222 S.W.3d at 812; ***Moulton***, 360 S.W.3d at 566. Thus, the trial court did not abuse its discretion in determining that any prejudicial nature or risk in admitting the interview did not substantially outweigh the interview's value as explanation and support for Henderson's opinions. *See* ***Austin***, 222 S.W.3d at 812; ***Moulton***, 360 S.W.3d at 566. We overrule issues three and four.

## DISPOSITION

Having overruled Appellant's first, second, third, and fourth issues, we ***affirm*** the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered September 9, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

10



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**SEPTEMBER 9, 2020**

**NO. 12-19-00265-CR**

**ANGEL ROSE LEE,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 159th District Court

of Angelina County, Texas (Tr.Ct.No. 2018-0149)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*